UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| KEVIN ROBINSON,<br><br>  Petitioner<br><br>v.<br><br>STATE OF MAINE,<br><br>  Respondent | )<br>)<br>)<br>)<br>)  1:24-cv-00334-JAW<br>)<br>)<br>)<br>) |

**RECOMMENDED DECISION ON 28 U.S.C. § 2254 PETITION**

Petitioner, pursuant to 28 U.S.C. § 2254, seeks relief from state court convictions and sentences for aggravated drug trafficking. (Petition, ECF No. 1.) Petitioner argues his attorneys provided ineffective assistance at trial and on appeal, and that the trial court erred when it polled the jury. The State asks the Court to dismiss the petition. (Response, ECF No. 7.)

After a review of the section 2254 petition, the State's request for dismissal, and the record, I recommend the Court grant the State's request and dismiss the petition.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

**A. The Investigation**

In June 2017, a confidential informant agreed to cooperate with the Maine Drug Enforcement Agency (MDEA) and identified an individual as a target for investigation (the target). Police installed software on the informant's phone to monitor and record calls with the target.

On August 10, 2017, the informant called the target to arrange for the purchase of cocaine base. The informant and the target agreed to meet the following day. The informant was provided with a concealed recording device and money for the purchase. The informant and the target made additional arrangements during several recorded phone calls. The informant entered an apartment at the agreed upon location, exchanged the money for cocaine base, left the apartment, and turned over the cocaine base to law enforcement.

On August 24, 2017, the informant placed two recorded phone calls to arrange another controlled purchase. As before, MDEA provided the informant with money for the purchase and a concealed recording device. The informant returned to the apartment, exchanged the money for cocaine base, returned to the officers, and turned over the drugs.

On September 6, 2017, the target called the informant multiple times. The informant returned the calls on September 7, 2017. During the recorded conversation, the target suggested that he would provide additional cocaine base on credit. After additional phone calls to change the meeting location, the informant followed the target's vehicle to an apartment building, entered the apartment as the target directed, picked up a bag, which contained smaller bags of cocaine base with a reported value of $800, returned to law enforcement officers, and turned over the drugs. Bangor Police Department officers subsequently stopped the vehicle driven by the target and arrested him. Upon arrest, the target provided an identification card bearing the name Sonny Rapheal.

After the target was transported to the Penobscot County Jail, investigators provided him with *Miranda* warnings and questioned him for approximately thirty-six minutes.

During the questioning, the target then identified himself as Kevin Robinson (Petitioner), provided his date of birth, and stated that he had been selling crack cocaine.

**B.     Criminal Proceedings**

On September 8, 2017, the State filed a criminal complaint charging Petitioner with two counts of aggravated trafficking of scheduled drugs in violation of 17-A M.R.S. § 1105-A(B)(1) based on the August 11 and August 24 transactions.  The complaint alleged an aggravating factor of a 2005 Connecticut felony conviction for selling illegal drugs.  In November 2017, Petitioner was indicted on the same charges.

A jury trial was held in April 2018.  Initially, defense counsel agreed to stipulate to the prior conviction so that the issue would not be raised before the jury.  When the charges against Petitioner were read aloud, the clerk did not use the word "aggravated" when describing the trafficking charges, but when the presiding judge addressed the jury shortly thereafter, the judge described the charges as "aggravated" trafficking.

The lead MDEA agent and the informant testified consistent with the summary of the investigation outlined above.  Experts in chemical analysis testified as to laboratory tests confirming that the substance that the informant turned over to law enforcement was cocaine base.  The State played for the jury more than a dozen audio recordings of the phone calls arranging and discussing the transactions.  When the prosecutor attempted to play a short excerpt of the video recording of the interrogation, Petitioner, through counsel, asked the court to play the entire recording.  Because the recording contained statements that might be unfairly prejudicial to Petitioner, including Petitioner's statement that he did not want to return to jail, the court asked whether Petitioner was sure that he wanted to play

the entire recording. After a brief recess for defense counsel to confirm that Petitioner was aware of the contents of the recording and still wished to play the entire recording, the court granted Petitioner's request, and the entire recording was played for the jury.

On the second day of trial, defense counsel informed the court that Petitioner did not wish to stipulate to the prior conviction. The parties and the court later agreed to use a bifurcated approach to the prior conviction issue: the introduction of evidence and arguments about the prior conviction as an aggravating factor would not occur unless and until the jury found Petitioner guilty of trafficking. After deliberating following the close of the evidence on the first phase of the case, the jury found Petitioner guilty on both counts of drug trafficking. The parties then presented evidence and argument on the prior conviction issue. The jury found that Petitioner committed the prior conviction.

The court then polled each juror about whether the juror found Petitioner guilty of trafficking in scheduled drugs on the two occasions alleged in the indictment. All twelve jurors said they found Petitioner guilty on both charges. The court then polled each juror as to whether the juror found that Petitioner had a prior qualifying conviction. All twelve jurors said yes. Approximately one month later, in May 2018, Petitioner was sentenced to concurrent terms of twenty-five years in prison.

Petitioner filed a direct appeal. Petitioner argued that the trial court erred by: (1) using the word "aggravating" in the initial statement to the jury regarding the pending charges, and (2) polling the jury (a) on the two aspects of the verdict at the conclusion of all deliberations rather than after each part of the verdict was announced and (b) asking

questions that elicited a yes or no answer rather than a guilty or not guilty response; in March 2019, the Law Court affirmed. *State v. Robinson*, 2019 ME 46, 205 A.3d 893.

In April 2019, Petitioner filed a state court petition for postconviction relief. An evidentiary hearing was held in September 2021. The trial court denied postconviction relief in October 2021. Petitioner sought discretionary review from the Law Court; in April 2022, the Law Court denied the petition for a certificate of probable cause to appeal the Superior Court's postconviction decision.

In November 2023, Petitioner filed a petition requesting that the Superior Court reopen the postconviction proceedings. Petitioner asserted that he was punished for exercising his right to a jury trial, that he was not competent to assist postconviction counsel, and that appellate and postconviction counsel provided ineffective assistance. In January 2024, the Superior Court dismissed the second petition for postconviction relief. In March 2024, Petitioner again sought discretionary review from the Law Court. The Law Court dismissed the petition for an appeal because Petitioner did not file it within the twenty-one-day deadline provided under the applicable Maine rules of procedure.

Petitioner subsequently filed the federal § 2254 petition.

## DISCUSSION

**A.    Legal Standards**

Pursuant to 28 U.S.C. § 2254(a), a person in custody pursuant to the judgment of a state court may apply to a federal district court for a writ of habeas corpus "only on the ground that he [or she] is in custody in violation of the Constitution or laws or treaties of the United States."

Absent circumstances not relevant to Petitioner's case, a petitioner is required to exhaust available state court remedies before he seeks federal habeas review. 28 U.S.C. § 2254(b), (c).[1] "Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Baldwin v. Reese,* 541 U.S. 27, 29 (2004) (quoting *Duncan v. Henry,* 513 U.S. 364, 365 (1995) (per curiam)) (quotation marks omitted). In *Baldwin,* the Court noted that "[t]o provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Id.* (quoting *Duncan,* 513 U.S. at 365–66).

---

[1] Title 28 U.S.C. § 2254(b) and (c) address exhaustion and state:

> **(b) (1)** An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
>> **(A)** the applicant has exhausted the remedies available in the courts of the State; or
>>
>> **(B) (i)** there is an absence of available State corrective process; or
>>
>> **(ii)** circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> **(2)** An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> **(3)** A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> **(c)** An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

To exhaust a claim fully in state court in Maine, a petitioner must request discretionary review by the Law Court. *See* 15 M.R.S. § 2131. The Supreme Court has held that a procedural default bars federal review absent cause for the default and prejudice to the petitioner:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991).[2] A "fundamental miscarriage of justice" has only been recognized in cases of "actual innocence," meaning that the petitioner must demonstrate that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Gunter v. Maloney*, 291 F.3d 74, 83 (1st Cir. 2002) (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

Because the constitutional right to counsel does not extend beyond a direct appeal to cover collateral attacks on a conviction, *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987), ineffective assistance in a state postconviction proceeding generally cannot establish cause to set aside a procedural default. *Coleman*, 501 U.S. at 752–55. In *Martinez v. Ryan*, 566 U.S. 1 (2012), the Supreme Court recognized a "narrow exception" to the rule, based on equity, not constitutional law: "Inadequate assistance of counsel at initial-

---

[2] Procedural default is a judicial doctrine "related to the statutory requirement that a habeas petitioner must exhaust any available state-court remedies before bringing a federal petition." *Lovins v. Parker,* 712 F.3d 283, 294 (6th Cir. 2013) (citing 28 U.S.C. § 2254(b), (c)).

review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." 566 U.S. at 9, 16.  However, when the procedural default relates to post-conviction counsel's actions at the discretionary-review stage rather than at the initial-review stage of the collateral proceedings, habeas relief is not available:

> The holding in this case does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts.  It does not extend to attorney errors in any proceeding beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial . . . .

*Martinez*, 566 U.S. at 16 (citations omitted).

As to federal habeas claims that were adjudicated on the merits in state court, the federal court may not grant relief unless (1) the state court decision was contrary to, or an unreasonable application of, federal law, as determined by the Supreme Court, pursuant to 28 U.S.C. § 2254(d)(1); or (2) the decision was based on an unreasonable determination of the facts, pursuant to section 2254(d)(2).[3]

As to review of a state court decision under section 2254(d)(1), "[i]t is settled that a federal habeas court may overturn a state court's application of federal law only if it is so

---

[3] Title 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim−
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

8

erroneous that 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.'" *Nevada v. Jackson,* 569 U.S. 505, 508-09 (2013) (per curiam) (quoting *Harrington v. Richter,* 562 U.S. 86, 102 (2011)). "A state court must be granted a deference and latitude that are not in operation when the case involves review under the [*Strickland v. Washington*, 466 U.S. 668 (1984)] standard itself." *Harrington*, 562 U.S. at 101. Claims of ineffective assistance of counsel are thus subject to a "'doubly deferential'" standard of review, in deference to both the state court and defense counsel. *Woods v. Etherton,* 578 U.S. 113, 117 (2016) (per curiam) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011)). State court determinations of fact "shall be presumed to be correct," and "[t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).[4]

In *Strickland*, the Supreme Court set forth the relevant Sixth Amendment standard by which claims of ineffective assistance based on counsel's errors are evaluated on the

---

[4] Because the Law Court's decisions are the final state court adjudications on the merits of each claim, the decisions under review in this case are the Law Court's orders affirming the decisions of the trial court. *See Greene v. Fisher*, 565 U.S. 34, 40 (2011) (noting that the last state-court adjudication on the merits of the petitioner's constitutional claim occurred on direct appeal to the state's supreme court); *Clements v. Clark*, 592 F.3d 45, 52 (1st Cir. 2010) ("A matter is 'adjudicated on the merits' if there is a 'decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground.'") (quoting *Teti v. Bender*, 507 F.3d 50, 56-57 (1st Cir. 2007)).

However, because the Law Court's postconviction order did not explain the Court's reasoning for denying a certificate of probable cause, the federal court may consider the trial court's decision for those claims:

> We hold that the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

*Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018) (noting the state may rebut the presumption).

9

merits; *Strickland* requires a petitioner to demonstrate that "counsel's representation fell below an objective standard of reasonableness," and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 688, 694. A court need not "address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. A court presumes "that counsel has 'rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Companonio v. O'Brien*, 672 F.3d 101, 110 (1st Cir. 2012) (quoting *Strickland*, 466 U.S. at 690).

A court considers "the totality of the evidence," and "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Strickland*, 466 U.S. at 695-96. "[T]he ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged." *Id.* at 696.

**B.     Prior Conviction**

Petitioner argues the trial court erred by disclosing the existence of a prior conviction to the jury. (Petition at 10.) Petitioner evidently refers to the argument he raised on appeal that the trial judge should not have used the word "aggravated" when describing the criminal charges to the jury because at that time, Petitioner had agreed to stipulate to the existence of the prior conviction so that the Government would not need to introduce evidence of the prior conviction, mitigating the risk that the jury would improperly consider his prior crimes when determining whether he was guilty of the trafficking charges.

10

The Law Court found no reversible error because several facts other than the existence of a prior conviction can also serve as the aggravating factor and because Petitioner later insisted on revealing his prior incarceration by playing the full video recording of the interrogation. Petitioner does not cite any federal constitutional right to support his claim, but his argument regarding the possibility of bias or prejudice could be construed as a due process claim. A petitioner, however, "may not . . . transform a state-law issue into a federal one merely by asserting a violation of due process." *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996). For a state evidentiary issue to create a cognizable claim on federal habeas review, it must be "so arbitrary or capricious" that it "results in a fundamentally unfair trial" and, therefore, constitutes an independent due process violation. *Lyons v. Brady*, 666 F.3d 51, 55–56 (1st Cir. 2012). Petitioner does not explain why it was unfairly prejudicial to inform the jury of the actual charge. Petitioner's argument assumes that jurors knew that an aggravated trafficking charge meant that he had a prior conviction. There is no record evidence that would support a finding that the jury was aware that a prior felony conviction was an element of an aggravating trafficking charge. Even if use of the term was deemed to be an error, for the reasons the Law Court discussed, the use of the word in a single sentence falls far short of establishing that the entire trial was fundamentally unfair.

Petitioner also asserts that his attorney provided ineffective assistance by failing to explain adequately the meaning of the terms "stipulation to priors" and "bifurcated trial" in the context of the prior conviction. (Petition at 5.) Petitioner conceded that counsel attempted to explain the terms to him, but he "just didn't understand it." (Postconviction

11

Hearing Transcript at 16–18.) Petitioner has not identified the part of counsel's explanation that was unreasonable or improper, and nothing is apparent in the record. Even if counsel's attempt to discuss the issue and define the terms was somehow inadequate, Petitioner cannot establish prejudice because the evidence of guilt of trafficking was overwhelming, and he does not deny the prior conviction or assert there was some deficiency in the Government's proof of the prior conviction. In other words, given the abundant recorded evidence, including Petitioner's own statements, establishing that Petitioner distributed the drugs, (a) there is no reasonable likelihood that unfair bias impacted the finding of guilt on trafficking, and (b) regardless of the explanation counsel could have given regarding the benefits of a stipulation or bifurcated trial, there is no reasonable likelihood that the aggravating factor would not have been established either by stipulation or by evidence.[5]

The state court's decision rejecting Petitioner's claims regarding his prior conviction was not contrary to or an unreasonable application of federal law.

## C. Pretrial Investigation

Petitioner contends that counsel did not conduct an adequate pretrial investigation. If a "lawyer neither investigate[s]" nor makes "a reasonable decision not to investigate[ ] the State's case through discovery," it can amount to "a complete lack of pretrial

---

[5] To the extent that Petitioner intended to reassert his previous argument that he would have pled guilty instead of proceeding to trial if he had understood the meaning of stipulation and bifurcation, the argument is implausible. The terms have little, if any, significance at the plea stage and only become significant when considering the options most favorable to Petitioner for how the Government can prove the prior conviction at trial. Petitioner does not deny the prior conviction or assert that there was some reason to believe that the Government would have been unable to prove the prior conviction at trial. Accordingly, there is no support for Petitioner's contention that a better understanding of the terms would have resulted in a guilty plea.

preparation," undermining "the reliability of the adversarial process." *Kimmelman v. Morrison*, 477 U.S. 365, 385 (1986). Petitioner does not explain how counsel's investigation was deficient. Petitioner also does not allege a "total failure" to investigate or conduct pre-trial discovery that led to counsel failing to notice a significant constitutional issue, as occurred in *Kimmelman*. *Id.* at 386–87.

To the extent Petitioner intended to reassert the argument made in the state court proceedings that counsel should have investigated further Petitioner's mental health conditions (e.g., ADHD and PTSD) and learning disabilities (e.g. dyslexia), the argument fails for similar reasons. Petitioner does not explain what counsel should have done differently that could have altered the outcome if counsel had learned more about Petitioner's cognitive difficulties, and nothing is apparent from a review of the record.

The state court's rejection of Petitioner's claim was not contrary to or an unreasonable application of federal law.

**D.    Polling the Jury**

Petitioner contends the trial court improperly polled the jury. The Law Court found no error in the timing, order, or form of the questions. *Robinson*, 2019 ME 46 at ¶ 6–7. The Law Court also noted that under the circumstances of this case, the trial court was not authorized to inquire into the jury's deliberations by asking each juror whether he or she felt coerced by other jurors. *Id.* at 7 n.4. The claim lacks merit because "[t]he right to poll the jury, though one of long-standing in federal and most state courts . . . is not . . . a binding constitutional right." *Saldana v. McDonald*, No. 1:10-CV-01747-JLT, 2013 WL 1626567, at *19 (E.D. Cal. Apr. 15, 2013) (collecting cases). Because there are no Supreme Court

13

cases recognizing the asserted right, the state court's decision was not contrary to or an unreasonable application of any Supreme Court case. To the extent that Petitioner intended to argue that counsel provided ineffective assistance by failing to object or request different polling questions or timing, he failed to establish deficient performance or prejudice from counsel's decisions because the record lacks any suggestion that the jury was not unanimous or that any of the jurors was coerced in any way.

### E.    Appellate and Postconviction Counsel

Petitioner asserts that his lawyers during the direct appeal and the state postconviction proceedings provided ineffective assistance by failing to challenge the mistakes of trial counsel and to assert the other issues Petitioner has raised. (Petition at 8–9.) The claim necessarily fails because Petitioner has not established that the trial court committed any error or that trial counsel provided ineffective assistance. Furthermore, because there is no constitutional right to postconviction counsel, the performance of postconviction counsel cannot be the basis for habeas relief. *See Coleman*, 501 U.S. at 752, 755–56.[6]

Petitioner also argues that appellate counsel provided ineffective assistance by failing to challenge the trial court's "failure to allow Petitioner to use counsel that was originally granted by the Court." (Petition at 8.) Petitioner does not explain which attorney he believes should have represented him at trial or the reasons that he contends the trial

---

[6] At most, the lack of effective assistance at the initial postconviction proceeding can provide cause to excuse a procedural default based on the failure to raise a claim of ineffective assistance of trial counsel, *see Martinez*, 566 U.S. at 9, 16. Those circumstances are not present here.

court erred by appointing a different attorney. "The [Sixth] Amendment guarantees defendants in criminal cases the right to adequate representation, but those who do not have the means to hire their own lawyers have no cognizable complaint so long as they are adequately represented by attorneys appointed by the courts." *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624 (1989). Because Petitioner has not established that his trial attorney acted unreasonably or that Petitioner suffered any prejudice from his trial attorney's decisions, Petitioner failed to show that a different appointed attorney would have altered the outcome.

The state court's decision was not contrary to or an unreasonable application of federal law.

## CONCLUSION

Based on the foregoing analysis, an evidentiary hearing is not warranted under Rule 8 of the Rules Governing Section 2254 Cases. I recommend the Court dismiss Petitioner's petition for habeas relief under 28 U.S.C. § 2254, and that the Court deny a certificate of appealability pursuant to Rule 11 of the Rules Governing Section 2254 Cases because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

## **NOTICE**

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen

(14) days of being served with a copy thereof.  A responsive memorandum and shall be filed within fourteen (14) days after the filing of the objection.

      Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 19th day of May, 2025.